IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| | |
|---|---|
| JOHN OSTROWSKI, | ) |
| Plaintiff, | ) |
| v. | ) Civil Action No. _____ |
| LAKEWOOD CAPITAL, LLC, MICHAEL S. HARB, and THOMPSON & BOOTH, P.C., | ) Jury Trial Demanded |
| Defendants. | ) |

## COMPLAINT

### JURISDICTION AND VENUE

1. Jurisdiction of this Court arises under 28 U.S.C. § 1331 and pursuant to 15 U.S.C. § 1692k(d).

2. This action arises out of numerous and multiple violations of the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692 et seq. ("FDCPA") in their illegal efforts to collect a consumer debt.

3. Venue is proper in this District because the acts and transactions occurred here, Plaintiff resides here, and all the Defendants do business here.

### PARTIES

4. Plaintiff John Ostrowski (hereinafter "Plaintiff") is a natural person who resides in Hamblen County, Tennessee, and a "consumer" as that term is defined by 15 U.S.C. § 1692a(3).

1

5. Defendant Lakewood Financial, LLC (hereinafter "Defendant Lakewood") is a "debt collector" as that term is defined by 15 U.S.C. § 1692a(6), and may be served through its agent for service of process as follows: Michael S. Harb, 6914 Office Park Circle, Suite 150, Knoxville, TN 37909-1161.

6. Defendant Michael S. Harb (hereinafter "Defendant Harb") is a natural person who is an owner and/or member of Defendant Lakewood, and is a "debt collector" as that term is defined by 15 U.S.C. § 1692a(6), and may be served at his business address of 6914 Office Park Circle, Suite 150, Knoxville, TN 37909-1161, or his home address.

7. Defendant Thompson & Booth, P.C. (hereinafter "Defendant Thompson") is a "debt collector" as that term is defined by 15 U.S.C. § 1692a(6), and may be served through its agent for service of process as follows: Joshua M. Booth, 6914 Office Park Circle, Suite 125, Knoxville, TN 37909-1161.

## FACTUAL ALLEGATIONS

8. Defendants have alleged that Plaintiff incurred an obligation to pay money arising out of a transaction in which the money, property, insurance or services which are the subject of the transaction are primarily for personal, family or household purposes, and is therefore a "debt" as that term is defined by 15 U.S.C. § 1692a(5), namely, a debt allegedly originally owed to or serviced by Credit One Bank, N.A. (hereinafter "Credit One").

9. After default, the debt is transferred to Defendants for collection from Plaintiff.

10. Defendant Lakewood is engaged in the business of purchasing charged-off consumer debts and attempting to collect them from consumers.

11. Defendant Thompson regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.

12. When purchasing charged-off consumer debts, Defendant Lakewood makes an intentional business decision not to obtain competent evidence as to whether a written contract existed between the original creditor and the consumer, or if other documentation exists which shows when or how the debt was incurred, or anything beyond very rudimentary information (i.e., name, last known address, telephone number, social security number, amount due, name of original creditor, original account number, and current owner of the debt) that would allow it to correctly calculate the debt owed.

13. The lack of documentation Defendant Lakewood receives when they purchase charged-off debt is reflected in the price, sometimes as little as a penny or two on the dollar.

14. The usual way Defendant Lakewood collects charged-off consumer debts is to employ debt collection attorneys such as Defendant Thompson to file collection lawsuits, providing only sworn affidavits as evidence of the alleged debt.

15. Defendants Lakewood and Thompson file the collection lawsuits against Tennessee consumers, knowing they do not have competent evidence and do not intend to obtain competent evidence necessary to prove the alleged debts in state court.

16. The Tennessee Court of Appeals recently determined the competent evidence necessary for a debt buyer like Defendant Lakewood to prove the alleged debts.[1]

---

[1] (1) "'[E]very link in the chain between the party to which the debt was originally owed and the party trying to collect the debt must be proven by competent evidence in order to demonstrate standing'", *See, LVNV Funding, LLC v. Mastaw*, M2012-00990-COA-R3-CV, at p. 7 (Tenn. Ct. App. Apr. 30, 2012) (citing *Cach, LLC v. Askew*, 358 S.W.3d 58, 62 (Mo. 2012) (citing *Midwestern Health Mgmt., Inc. v. Walker*, 208 S.W.3d 295, 298 (Mo. App. 2006)), and "'the plaintiff must demonstrate . . . that it is the valid assignee of an existing debt' and that the record was made in the regular course of business". *Mastaw* at 7, *citing, Cuda & Assoc., LLC v. Lumpkin*, 2011 WL 6413674, at *1, 2; (Conn. Super. Ct. Nov. 29, 2011), (2) The production of business records that "properly fit within Rule 803(6), the business records exception to the hearsay rule". *Id.* at 11, and (3) The business records must be introduced by a "witness with 'personal knowledge of the business's record-keeping methods and can explain same to the

17. The litigation model followed by Defendants Lakewood and Thompson to collect debts from Tennessee consumers involves a "pattern and practice" of filing collection lawsuits: (1) after making intentional business decisions that, if challenged by a consumer, they will not obtain competent evidence of the alleged debt, including the contract on which they allegedly relied to file the collection lawsuit, (2) prior to reasonably and adequately investigating whether a consumer owes the amount of debt they are attempting to collect, or owes the debt at all, (3) using sworn affidavits that knowingly contain false, deceptive, and misleading statements made by persons who do not possess the personal knowledge of the terms of the contract on which Defendants allegedly relied to file the collection lawsuit necessary to make a sworn affidavit as to the correctness of the amount owed, within the requirements of Tennessee state law, and (4) with the improper motive of obtaining default judgments against 95% or more of the consumers who are intimidated by the sworn affidavits because they are made in the course of litigation and under penalty of perjury; all done in order to increase Defendants Lakewood and Thompson's respective financial bottom lines.

18. In a large majority of the collection cases they file, Defendants Lakewood and Thompson obtain a default judgment and the sufficiency of the sworn affidavits is not challenged.

19. When a consumer has the means and ability to defend the collection lawsuit, Defendants Lakewood and Thompson will dismiss the case rather than risk having their systemic fraud on the court exposed.

---

court'". *Id.* at 12, fn. 13 (*citing,* **Beal Bank S.S.B. v. RBM Co**., 2002 WL 43604, at *2) (Tenn.

### Collection Lawsuit

20. On November 2, 2011, Defendants filed a Summons for Civil Warrant and Affidavit against Plaintiff in state court (collectively the "collection lawsuit"). ***Copy of Collection Lawsuit filed as Exhibit 1 to Complaint (hereinafter "Doc. 1-1").***

21. The Summons for Civil Warrant (hereinafter "Civil Warrant") and sworn Affidavit were served on Plaintiff on November 17, 2011, in connection with collection of a debt and in an attempt to collect a debt, and each is a "communication" as defined by 15 U.S.C. § 1692a(2).

22. Despite the fact that Defendant Lakewood and Defendant Thompson possessed no competent evidence showing that Plaintiff owed the alleged debt, and prior to making a reasonable and adequate investigation as to whether Plaintiff owed the amount of debt they alleged, or owed the debt at all, Defendant Lakewood and Defendant Thompson filed the collection lawsuit against Plaintiff knowing that, if challenged by Plaintiff, they would not attempt to obtain any competent evidence that could be used to show in a court of law: (1) that Plaintiff had entered into the contract on which Defendants allegedly relied to file the collection lawsuit, or (2) how the amount claimed as owed was calculated.

23. Defendants Lakewood and Thompson filed the collection lawsuit seeking to collect in the Summons for Civil Warrant the amount of $2,255.89 "due upon sworn account, plus court costs, and private process in the amount of $35.00." ***See Doc. 1-1, p. 1.***

24. By making business decisions that, if challenged by Plaintiff, Defendant Lakewood and Defendant Thompson would not attempt to obtain any competent evidence that could be

---

Ct. App. Jan. 11, 2002) (citing *Alexander*, 903 S.W.2d at 700)).

used to show in a court of law: (1) that Plaintiff had entered into the contract on which Defendants allegedly relied to file the collection lawsuit, or (2) how the amount claimed as owed was calculated, the Defendants used knowingly false, deceptive, and misleading representations or means in connection with collection of the alleged debt.

25. The collection lawsuit filed against Plaintiff was based solely on a sworn account, which claim was defective because it was knowingly based on false, deceptive, and misleading statements in the sworn Affidavit filed with the Civil Warrant intended to deceive the state court and Plaintiff about the knowledge and information that Defendants had about the ownership and correct amount of the alleged debt.

26. On January 10, 2012, Plaintiff filed a Sworn Denial in the collection lawsuit in which she stated that he had not entered into any agreement with Defendant Lakewood for the repayment of debt or otherwise and that he did not believe he owed any money to Defendant Lakewood. ***Copy of Sworn Denial filed as Exhibit 2 to Complaint (hereinafter "Doc. 1-2").***

27. Without the contract on which Defendants allegedly relied to file the collection lawsuit, Defendants may not recover attorney's fees or contract rate of interest on the underlying debt. *Holcomb v. Cagle*, 277 S.W.3d 393, 397-98 (Tenn. Ct. App. 2008) (perm. app. den. Sup. Ct., December 15, 2008)).

### *Use of Civil Warrant That Contained False, Deceptive and Misleading Statements in Connection With Collection of the Alleged Debt*

28. The demand in the Civil Warrant that Plaintiff owes $2,255.89 "due upon sworn account, plus court costs, and private process in the amount of $35.00" was for an amount not expressly authorized by the agreement creating the debt or permitted by law.

29. By filing a Civil Warrant that contained knowingly false, deceptive, and misleading representations in connection with collection of the debt by stating in the Civil Warrant that Defendant Lakewood was entitled to an amount not expressly authorized by the agreement creating the debt or permitted by law, without personal knowledge of whether a contract on which Defendants allegedly relied to file the collection lawsuit existed, or what language it included regarding contract interest, Defendants Lakewood and Thompson falsely represented the character, amount and legal status of the debt, in violation of 15 U.S.C. § 1692e(2)(A), and falsely represented the compensation which may be lawfully received by any debt collector for the collection of a debt, in violation of 15 U.S.C. § 1692e(2)(B), which was the use of false, deceptive, and misleading representations or means in connection with collection of the debt or in attempt to collect the debt, in violation of 15 U.S.C. §§ 1692e and 1692e(10), and the use of unfair or unconscionable means to collect or attempt to collect the debt, in violation of 15 U.S.C. § 1692f.

30. By filing the Civil Warrant which contained deceptive and misleading representations in connection with collection of the debt while unreasonably relying on Credit One or an assignee of Credit One as to the amount of debt allegedly owed by Plaintiff, without knowledge of whether a contract on which Defendants allegedly relied to file the collection lawsuit existed, or what language it included regarding contract interest, Defendant Lakewood and Defendant Thompson communicated credit information to the State court, the general public, and the Plaintiff, which is known or should be known to be false, in violation of 15 U.S.C. § 1692e(8).

31. By attempting to collect amounts not expressly authorized by the agreement creating the debt or permitted by law, Defendant Lakewood and Defendant Thompson violated 15 U.S.C. § 1692f(1).

32. The demand in the Civil Warrant that Plaintiff owes $2,255.89 "due upon sworn account, plus court costs"" was made by Defendant Lakewood and Defendant Thompson knowing that, if challenged by Plaintiff, the Defendants would not attempt to obtain any competent evidence that could be used to show in a court of law: (1) that Plaintiff had entered into the contract on which Defendants allegedly relied to file the collection lawsuit, or (2) how the amount claimed as owed was calculated, or make a reasonable and adequate investigation as to whether Plaintiff owed the amount of debt they were attempting to collect or owed the debt at all, and was the use of deceptive and misleading representations or means in connection with collection of the debt that would create a false impression in the mind of the least sophisticated consumer that Defendant Lakewood and Defendant Thompson had attempted to correctly calculate the amount owed based on the terms of the contract Plaintiff allegedly had with the original creditor prior to filing the Civil Warrant, when they had intentionally made no effort to do, and the amount of debt alleged as owed was not authorized by the agreement creating the debt or permitted by law, in violation of 15 U.S.C. §§ 1692e, 1692e(5), and 1692e(10).

### *Use of Sworn affidavit to Collect Debt*

33. An affidavit filed in support of a Civil Warrant on a sworn account in Tennessee is filed to attest to the correctness of the amount owed. ***See, Tenn. Code Ann. § 24-5-107(a).***

34. Defendant Harb, who authored the sworn Affidavit dated October 18, 2011, swore under penalty of perjury that:

(a) "[H]e . . . is the AUTHORIZED REPRESENTATIVE of Lakewood Capital, LLC";

(b) He is "familiar with the records owned, maintained, or in the possession of Lakewood Capital, LLC";

(c) "Lakewood Capital, LLC is the assignee of: CREDIT ONE BANK, N.A. and/or any other assignee that may have or have had an interest in the account of John Ostrowski or any interest in any obligation relating to the account"; and

(d) "[B]ased on the records maintained and in the possession of Lakewood Capital, LLC, having been obtained in good faith, said account is justly owing, due and unpaid in the amount of $2,255.89, over and above all set-offs and counterclaims and includes interest and attorney's fees, where applicable."

(all capital letters in original)

35. Prior to signing the Affidavit, Defendant Harb did not review records of the originator of the debt to determine if the contract on which Defendants allegedly relied to file the collection lawsuit existed and, if so, whether the amount Plaintiffs allegedly owed was correct, because Defendant Lakewood followed its litigation model of not obtaining records of the originator of the debt that would have allowed Defendant Harb to do so.

36. Without the originator's records available for Defendant Harb to review prior to signing the sworn Affidavit, and without Defendant Harb attempting to correctly calculate the amount owed by Plaintiff based on the terms of the contract on which Defendants allegedly relied to file the collection lawsuit, it was not possible for Defendant Harb to

have the personal knowledge required to truthfully make a sworn affidavit as to the correctness of the amount owed, if any, by Plaintiff.

37. Form affidavits, such as the one filed in the lawsuit against Plaintiff, are generated automatically by a computer owned by Defendant Lakewood, or its agents, upon request and routinely provided to Defendant Harb and other employees and/or agents of Defendant Lakewood who engage in robo-signing tens, if not hundreds, of affidavits each day without the personal knowledge required to make a sworn affidavit as to the correctness of the amount owed, within the requirements of Tennessee state law.

38. The form affidavit was attached to and filed with the Civil Warrant by Defendant Thompson.

39. Defendant Lakewood and Defendant Thompson intentionally use virtually identical form affidavits in the collection lawsuits filed against Tennessee consumers, alleging facts not in possession of Defendant Lakewood and to which their agents are not qualified to sign under oath due to their lack of personal knowledge about the terms of the contract on which Defendants allegedly relied to file the collection lawsuit.

40. Defendant Lakewood and Defendant Thompson filed the collection lawsuit against Plaintiff in an attempt to collect the debt knowingly using Defendant Harb's sworn Affidavit as the only evidentiary basis to support their claims.

41. Defendant Harb's demands in the sworn Affidavit for interest and attorney's fees, without personal knowledge of the terms of the contract on which Defendants allegedly relied to file the collection lawsuit, or what language it included regarding interest and attorney's fees, were false, deceptive and misleading misrepresentations made without the personal knowledge required to make a sworn affidavit as to the correctness of the

amount owed, if any, by Plaintiff, as required by Tennessee law, in violation of 15 U.S.C. § 1692e(2)(A), and falsely represented the compensation which may be lawfully received by any debt collector for the collection of a debt, in violation of 15 U.S.C. § 1692e(2)(B), and was the use of false, deceptive, and misleading representations or means in connection with collection of the debt or in an attempt to collect the debt, in violation of 15 U.S.C. §§ 1692e and 1692e(10), and the use of unfair or unconscionable means to collect or attempt to collect the debt, in violation of 15 U.S.C. § 1692f.

42. By filing the collection lawsuit: (1) after making intentional business decisions that they will not obtain competent evidence of the alleged debt, if challenged by Plaintiff, (2) prior to reasonably and adequately investigating whether Plaintiff owed the amount of debt they were attempting to collect, or owed the debt at all, (3) while using a sworn Affidavit signed by Defendant Harb who does not possess personal knowledge of the terms of the contract on which Defendants allegedly relied to file the collection lawsuit necessary to make an affidavit as to the correctness of the amount owed within the requirements of Tennessee state law, and that knowingly contains false, deceptive, and misleading statements, and (4) with the improper motive of obtaining a default judgment against Plaintiff through intimidation by having Defendant Harb sign the sworn affidavit in the course of litigation and under penalty of perjury, in order to increase their respective financial bottom lines, Defendant Lakewood and Defendant Thompson violated 15 U.S.C. § 1692e(5), and the threat to take any action that cannot legally be taken is the use of a false, misleading and deceptive representations or means to collect or attempt to collect the debt, in violation of 15 U.S.C. §§ 1692e and 1692e(10).

43. By using false, deceptive, and misleading representations or means in connection with collection of the debt by filing the sworn Affidavit that included the knowingly false, deceptive, and misleading statements, including the amount owed of $2,255.89, Defendant Lakewood and its agents communicated credit information to the State court, the general public, and Plaintiff, which is known or should be known to be false, in violation of 15 U.S.C. § 1692e(8).

44. By attempting to collect amounts in the sworn Affidavit not expressly authorized by the agreement creating the debt or permitted by law, Defendant Lakewood and Defendant Thompson violated 15 U.S.C. § 1692f(1).

45. The statement in the Affidavit that Plaintiff owed $2,255.89, and that such balance will continue to accrue interest and attorney's fees, after Defendant Lakewood and Defendant Thompson intentionally chose not to obtain or to have Defendant Harb review the contract on which Defendants allegedly relied to file the collection lawsuit or other evidence as to the amount of debt allegedly owed by Plaintiff or the fact that Plaintiff owed the debt at all, prior to execution of the sworn Affidavit, was the use of deceptive and misleading representations or means in connection with collection of the debt that would create a false impression in the mind of the least sophisticated consumer that Defendants had attempted to correctly calculate the amount owed based on the terms of the contract on which Defendants allegedly relied to file the collection lawsuit, when Defendants had intentionally made no effort to do so, in violation of 15 U.S.C. §§ 1692e, 1692e(5), and 1692e(10).

*Failure To Include § 1692e(11) Language In Subsequent Communication - Sworn Affidavit*

46. The FDCPA states:

    "The failure to disclose . . . in subsequent communications that the communication is from a debt collector." 15 U.S.C. § 1692e(11).

47. The sworn Affidavit is a "communication" as defined by 15 U.S.C. § 1692a(2).

48. The sworn Affidavit is not a formal pleading made in connection with a legal action.

49. The sworn Affidavit is a subsequent communication by the Defendants with Plaintiff in connection with collection of the debt in which Defendants failed to disclose in the sworn Affidavit that the communication is from a debt collector, in violation of 15 U.S.C. § 1692e(11).

*Summary*

50. The above-detailed conduct by Defendants in connection with collection of the debt was conduct in violation of numerous and multiple provisions of the FDCPA including, but not limited to the above-cited provisions of the FDCPA.

**TRIAL BY JURY**

51. Plaintiff is entitled to and hereby respectfully demands a trial by jury. US Const. amend. 7. Fed.R.Civ.P. 38.

**CAUSES OF ACTION**

**COUNT I.**

**VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT**

**15 U.S.C. §§ 1692 *et seq.***

52. Plaintiff incorporates by reference all of the above paragraphs as though fully stated herein.

53. The foregoing acts and omissions of Defendants constitute numerous and multiple violations of the FDCPA including, but not limited to each and every one of the above-cited provisions of the FDCPA, 15 U.S.C. §§ 1692 *et seq.*, with respect to Plaintiff.

54. As a result of Defendants' violations of the FDCPA, Plaintiff is entitled to actual damages pursuant to 15 U.S.C. § 1692k(a)(1), in an amount to be determined at trial by a jury; statutory damages in the amount of $1,000.00 pursuant to 15 U.S.C. § 1692k(a)(2)(A); and, reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1692k(a)(3) from each and every Defendant.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays that judgment be entered against each and every Defendant:

### COUNT I.

### VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT

### 15 U.S.C. § 1692 et seq.

- for an award of actual damages pursuant to 15 U.S.C. § 1692k(a)(1) against each and every Defendant and for Plaintiff, in an amount to be determined at trial by a jury;

- for an award of statutory damages of $1,000.00 pursuant to 15 U.S.C. §1692k(a)(2)(A) against each and every Defendant, and for Plaintiff;

- for an award of costs of litigation and reasonable attorney's fees pursuant to 15 U.S.C. § 1692k(a)(3) against each and every Defendant and for Plaintiff; and

- for such other and further relief as may be just and proper.

11/17/12                             Respectfully submitted,

                                     **JOHN OSTROWSKI**


                                     /s/      Alan C. Lee
                                     Alan C. Lee, Esq., BPR # 012700
                                     Attorney for Plaintiff
                                     P. O. Box 1357
                                     Talbott, TN 37877-1357
                                     (423) 581-0924
                                     info@alanlee.com